# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| VICENTE PALACIOS CRAWFORD, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>      vs.<br><br>ANTONIO B. WON PAT INTERNATIONAL AIRPORT AUTHORITY, GUAM; EDWARD G. UNTALAN, EDDIE BAZA CALVO, and ANITA F. ORLINO, all in their official capacities only; and JOHN DOES 1-5,<br><br>           Defendants. | CIVIL CASE NO. 15-00001<br><br><br>**DECISION AND ORDER RE DEFENDANTS CALVO AND ORLINO'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT, AND DEFENDANT UNTALAN AND GIAA'S MOTION TO DISMISS** |

On March 28, 2016, the court heard the matter of Defendants Eddie Baza Calvo ("Calvo") and Anita F. Orlino's ("Orlino") Motion to Dismiss and for Summary Judgment (ECF No. 32); and Defendants Antonio B. Won Pat International Airport Authority ("GIAA") and Edward G. Untalan's[1] (Untalan) Motion to Dismiss Complaint (ECF No. 34). After reviewing the parties' submissions, and relevant caselaw and authority, and having heard argument from counsel on the matter, the court **DENIED** both motions at the hearing. The court now issues its

---

[1] At the hearing, counsel for GIAA and Edward G. Untalan stated that Mr. Untalan is no longer the Chairman of the Board of Directors of the GIAA. Pursuant to FED. R. CIV. P. 25(d), an action does not abate when a public officer who is a party in an official capacity ceases to hold office while the action is pending. Once the Board of Directors of GIAA selects a new chairperson, she or he will automatically be substituted as a party in the present case.

written decision.

## I.    Procedural History[2]

On January 16, 2015, Plaintiff filed the Complaint in this action. *See* Compl., ECF No. 1. Plaintiff's Complaint alleges four causes of action on behalf of himself and those similarly situated: (1) declaratory and injunctive relief under 42 U.S.C. § 1983 (Due Process Clause claim) against Defendants Calvo, Orlino, and Untalan; (2) declaratory and injunctive relief under 42 U.S.C. § 1983 (Equal Protection Clause claim) against Defendants Calvo, Orlino, and Untalan; (3) breach of contract claim against Defendants Calvo and Orlino; and (4) unjust enrichment claim against Defendants GIAA and Does 1–5. *See id.* at 19–23.

Eddie Baza Calvo is sued in his official capacity as the Governor of Guam. *Id.* at ¶ 13. Anita F. Orlino is sued in her official capacity as the Chairperson of the Guam Ancestral Lands Commission. *Id.* at ¶ 14. Edward G. Untalan is sued in his official capacity as the Chairman of the Board of Directors of the GIAA. *Id.* at ¶ 12. GIAA is a public corporation and autonomous agency of Guam. *Id.* at ¶ 10.

Plaintiff Vicente Palacios Crawford is an ancestral landowner of Lot 5204 in Tiyan, Barrigada. *Id.* at ¶ 16.

On April 9, 2015, Defendants Calvo and Orlino filed a Motion to Dismiss and for Summary Judgment. *See* ECF No. 32. Defendants GIAA and Untalan filed a Motion to Dismiss on the same day. *See* ECF No. 34.

## II.    Legal Standard

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Federal Rule of Civil Procedure 12(b)(1) provides that, in response to a claim for relief, a party may assert a defense of "lack of subject-matter jurisdiction" by way of motion. A Rule

---

[2] The lengthy factual background of this case is known to the parties, and the court need not recount it in this order.

12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court must determine whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. *See, e.g.*, *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir.) *cert. denied*, 135 S.Ct. 361 (2014). With a factual Rule 12(b)(1) attack, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. *White*, 227 F.3d at 1242. It also need not presume the truthfulness of the plaintiffs' allegations. *Id.*

## B.  Motion to Dismiss for Failure to State a Claim.

Federal Rule of Civil Procedure 12(b)(6) provides that, in response to a claim for relief, a party may assert a defense of "failure to state a claim upon which relief can be granted" by way of motion. Whether a party has sufficiently stated a claim for relief is viewed in light of FED. R. CIV. P. 8. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pursuant to Rule 8, a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The pleading standard under Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). The court must engage in a two-step procedure to determine the plausibility of a claim. *Id.* at 678–79. First, the court must weed out the legal

3

conclusions—that is "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"—in the pleading that are not entitled to a presumption of truth. *Id.* at 678. Second, the court should presume the remaining factual allegations are true and determine whether the claim is plausible. *Id.* at 679.

A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The court must "draw on its judicial experience and common sense" to determine the plausibility of a claim given the specific context of each case. *Id.* at 679.

### III.  Discussion

A federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction). *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). Therefore, the court will address Defendants' jurisdictional arguments first, and then turn to the failure to state a claim arguments.[3]

### A.  Defendants' Arguments to Dismiss Complaint for Lack of Subject Matter Jurisdiction.

The court will address Defendants Calvo and Orlino's arguments for dismissing the Complaint for a lack of subject matter jurisdiction first. Defendants Calvo and Orlino's arguments are as follows: (1) Plaintiff's claim for breach of contract is barred by sovereign immunity, as is the unjust enrichment claim (an argument joined by Defendants Untalan and GIAA). Defendants Untalan and GIAA's arguments are as follows: (2) Plaintiff's Due Process and Equal Protection claims under Section 1983 are not ripe for adjudication; (3) Plaintiff cannot

---

[3] At the outset, the court finds that none of the issues raised by Defendants Calvo and Orlino are appropriate for summary judgment because they have not identified which claims they seek summary judgment on. *See* FED. R. CIV. P. 56(a). Therefore, the court will not convert any part of Defendants Calvo and Orlino's Motion to Dismiss into a motion for summary judgment.

4

state a Due Process or Equal Protection claim because the Territory of Guam's officers are not "persons" under Section 1983; (4) all of Plaintiff's claims are barred because his ancestors pursued a claim for compensation through the U.S. District Court under 48 U.S.C. § 1424c.

### 1. Waiver of sovereign immunity.

Defendants Calvo and Orlino contend that sovereign immunity bars this court from having subject-matter jurisdiction over the breach of contract claim alleged against them. The Organic Act of Guam provides that the Government of Guam may only be sued in tort and contract "with the consent of the legislature evidenced by enacted law," thereby giving the Government of Guam sovereign immunity to such claims. 48 U.S.C. § 1421a.

The legislature has chosen, by way of 5 G.C.A § 6101 *et seq.* (the Government Claims Act), that "the Government of Guam hereby waives immunity from suit . . . for all expenses incurred in reliance upon a contract to which the Government of Guam is a party[.]" 5 G.C.A § 6105. "The Government of Guam" includes GIAA. *See* 5 G.C.A. § 6103(a). Because Plaintiff concedes that he has not filed a government claim for breach of contract, Defendants Calvo and Orlino contend that his breach of contract claim is barred by sovereign immunity.

Plaintiff states that this is no bar to his breach of contract claim, because Subsection 80104(g) of the Guam Ancestral Lands Commission Act operates as a legislative waiver of the Government of Guam's sovereign immunity for claims arising out of the Ancestral Lands Commission process. Neither party offered the court a statutory interpretation of Subsection 80104(g). However, a district court may conduct a statutory interpretation, acting as it believes that the State (or in this case, Territorial) Supreme Court would act to interpret the statute. *See, e.g.*, *Sobel v. Hertz Corp.*, 291 F.R.D. 525, 534 (D. Nev. 2013).

In cases involving statutory construction, this court first looks to the language of the statute itself. *Agana Beach Condo. Homeowners' Ass'n v. Untalan*, 2015 Guam 35 ¶ 13 (Guam

5

2015) (internal quotations omitted). "Absent clear legislative intent to the contrary, the plain meaning of the statute prevails." *Id.* (internal quotations omitted). However, the plain meaning of statutory language need not be followed "where the result would lead to absurd or impractical consequences, untenable distinctions, or unreasonable results." *Id.* (internal quotations omitted).

Title 21, Chapter 80 of the Guam Code Annotated codifies Guam's laws regarding the Ancestral Lands Commission, its powers and duties, and the process for the transfer of property or compensation to an ancestral landowner. The Chapter provides for a judicial appeals process. That subsection states that "[i]f disputes arise from an application which cannot be resolved by the Commission, then any of the opposing parties may invoke the judicial process at the party's expense." 21 G.C.A. § 80104(g). The statute does not define the term "opposing parties." Defendants Calvo and Orlino contend that opposing parties was only contemplated by the Legislature to mean disputes between two persons claiming the same parcel of land.

However, the plain meaning of the statute allows that an opposing party in a dispute arising from an application which cannot be resolved by the Commission can include Calvo, Orlino, or the GIAA. The Legislature did not expressly limit that "opposing parties" can only be persons claiming the same parcel of land.

"In determining legislative intent, a statute should be read as a whole, and . . . courts should construe each section in conjunction with other sections." *Agana Beach Condo. Homeowners' Ass'n*, 2015 Guam 35 ¶ 13 (internal quotations omitted). Therefore, "in expounding a statute, this court must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Id.* (internal quotation marks omitted).

The court notes Chapter 80's strong language acknowledging and reaffirming "[t]he responsibility of the government of Guam to enforce rights in private property, as a civil right,

pursuant to the laws of the United States of America applicable to Guam and the Laws of Guam." 21 G.C.A. § 80102. Further, the Legislature explicitly stated its intent in creating the Ancestral Lands Commission, "in order that original landowners, their heirs and their descendants may expeditiously exercise all their fundamental civil rights in the property they own." *Id.* That the Legislature chose this language further supports an interpretation of Subsection 80104(g) as a waiver of sovereign immunity such that the Government of Guam, and the GIAA, could be sued as necessary, in disputes arising out of an application that the Commission cannot resolve, in order to enforce rights in private property as expeditiously as possible.

Accordingly, this court finds that the plain meaning of Subsection 80104(g) of Title 21 of the Guam Code Annotated states a waiver of Defendants' sovereign immunity for claims arising out of the Ancestral Lands Commission process.[4]

The recent Supreme Court of Guam case, *Government of Guam v. Gutierrez*, 2015 Guam 8 (2015), is no bar, because the Supreme Court's references to subsection 80104(g) were in dicta, and moreover were in regards to the Ancestral Lands Commission's final decision on ownership of the estate in that case. In the present case, there is no dispute that Plaintiff owns the land.

All four defendants—Calvo, Orlino, Untalan, and GIAA—assert this same argument against Plaintiff's claim against GIAA for unjust enrichment: because Plaintiff has never filed a government claim for unjust enrichment, sovereign immunity bars the claim. But because of the above-mentioned reasoning, Plaintiff may sue GIAA for unjust enrichment.[5]

---

[4] The cases relied upon by Calvo and Orlino are inapposite: in none of those cases did a separate statute exist that authorized "opposing parties" to sue one another. *See Quan Xing He*, 2009 Guam 20 (2009) (lawsuit for tort—no statute authorizing "opposing parties" to invoke the judicial process); *Wood v. Guam Power Auth.*, 2000 Guam 18 (2000) (lawsuit for intentional tort—no statute authorizing "opposing parties" to invoke the judicial process)).

[5] Defendants Untalan and GIAA also argue that under the Government Claims Act, GIAA's sovereign immunity is completely separate from the sovereign immunity of the Government of Guam and its line agencies. This argument is immaterial since Plaintiff's claim for unjust enrichment was filed under 21 G.C.A. 80104(g), not under the Government Claims Act.

7

Accordingly, the court **DENIES** the motion to dismiss the breach of contract claim against Calvo and Orlino, and the unjust enrichment claim against GIAA because sovereign immunity has been waived for these claims.

### 2. Failure to exhaust administrative remedies.

Defendants Untalan and GIAA assert that Plaintiff's Section 1983 claims for a violation of the Due Process and Equal Protection clauses are not ripe, because he has not exhausted his state remedies, or shown that they are inadequate. Therefore, the court lacks subject-matter jurisdiction and cannot hear the claims. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

A plaintiff who brings a Section 1983 claim for a violation of procedural due process is required to exhaust his administrative remedies. *See Kildare v. Saenz*, 325 F.3d 1078 (9th Cir. 2003). Under *Williamson County*, there are two parts to establishing exhaustion. The first step requires that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985). The second step requires the plaintiff to "seek compensation through the procedures the State has provided for doing so." *Id.* at 194.

The court finds that Plaintiff has not exhausted his administrative remedy, because there has been no final decision from the Ancestral Lands Commission pursuant to Subsection 80104(c). This subsection lays out the four-step process for extinguishing an ancestral claim, an award of just compensation, and recordation of ancestral land title. Plaintiff has completed the first two steps of the Subsection 80104(c) process, which require action by him. Plaintiff has filed an ancestral claim and an ancestral title and compensation application. *See* 21 G.C.A. § 80104(c)(1)–(2). However, Plaintiff concedes that steps three and four have not been completed:

there has been no conditional award of just compensation, or extinguishment of ancestral land claim. *See* 21 G.C.A. § 80104(c)(3)–(4). Therefore, Plaintiff has not exhausted the administrative remedy.

However, the court finds that this does not bar him from bringing a Section 1983 claim. There is a "narrow exception" to the exhaustion requirement, which allows a claimant to bypass state procedures if such procedures are shown to be "unavailable or inadequate." *Equity Lifestyle Properties, Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1191 (9th Cir. 2008) (internal quotations omitted).

Plaintiff has shown that he cannot obtain just compensation through the state procedures, including 21 G.C.A. § 80104(c), or revenues through the Land Bank Trust, or through Public Laws 30-06 and 30-158.

Plaintiff has done his part to exhaust the Subsection 80104(c). The reason that he is unable to proceed with the final two steps is because these steps require the action of the Ancestral Lands Commission. All parties agree that the Ancestral Lands Commission cannot complete these steps until it establishes rules and regulations for the Land Bank Trust to be used to effectuate payment. To date, it has failed to do so. Thus, Plaintiff can do no more to "exhaust" the process.

Further, this court finds no authority for Defendants Untalan and GIAA's argument that negotiating legislation with a state legislature is an "administrative process" that must be exhausted by a plaintiff. Thus, it is immaterial if Plaintiff has exhausted all land-swap options via Public Law 30-06, or negotiated another mutually acceptable legislative resolution.

Based on these reasons, the court finds that Plaintiff has established that Guam's administrative remedies are inadequate, and Plaintiff may thus bring the Section 1983 claims. The court hereby **DENIES** Defendants Untalan and GIAA's motion to dismiss Plaintiff's Due

Process and Equal Protection claims for failure to exhaust administrative remedies.

### 3. GIAA Board of Directors' Chairperson is a "person" for purposes of Section 1983.

Defendants Untalan and GIAA assert that the court lacks subject-matter jurisdiction over Plaintiff's Section 1983 claims (and that Plaintiff fails to state a claim upon which relief can be granted) because Guam's officials are not "persons" for purposes of Section 1983. In order to maintain an action against an instrumentality of the federal government, there must be both "statutory authority granting subject matter jurisdiction" and "a waiver of sovereign immunity." *Arford v. United States*, 934 F.2d 229, 231 (9th Cir. 1991).

In *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, the Ninth Circuit held that a Guam officer sued in his official capacity is a "person" within the meaning of Section 1983. 962 F.2d 1366, 1370 (9th Cir. 1992). This decision appeared to be in conflict with a prior U.S. Supreme Court decision, which held that "neither the Territory of Guam nor its officers acting in their official capacities are 'persons' under § 1983." *Ngiraingas v. Sanchez*, 495 U.S. 182, 192 (1990) ("*Ngiraingas II*").

Although Defendants Untalan and GIAA argue that the case of *Ngiraingas II* controls and holds contrary to *Ada*, the Ninth Circuit in a recent case explicitly stated that "*Ada* binds us, and *Ngiraingas II* . . . offers no basis for us, as a three-judge panel, to reconsider *Ada*." *Paeste v. Gov't of Guam*, 798 F.3d 1228, 1235 (9th Cir. 2015).

The Ninth Circuit explained that this is not contrary to the U.S. Supreme Court's holding in *Ngiraingas II*, because *Ngiraingas II* involved damages suits, whereas *Paeste* adopted the reasoning of *Ada*, and recognized the difference between suits for damages against officials in their official capacities, which violate sovereign immunity, and the established, contrary principle that suits seeking prospective relief do not. *Paeste*, 798 F.3d at 1237 (citing *Ada*, 962 F.2d at 1371).

10

In the Complaint, Plaintiff asks the court to order injunctive and declaratory relief as appropriate to (1) ascertain the value of Plaintiff and class members' ancestral land claims, (2) provide Plaintiff and class members with "full compensation," and (3) injunctive and declaratory relief to cease the unequal treatment of class members with respect to their ancestral land claims. Because Plaintiff seeks injunctive relief to require the Government of Guam to establish and implement adequate procedures for processing ancestral land claims, the relief is prospective in nature.

For the foregoing reasons, the court **DENIES** the motion to dismiss the Section 1983 claims against Defendant Untalan because he is a "person" for purposes of a Section 1983 suit.

### 4. Res judicata.

Defendants Untalan and GIAA contend that Plaintiff's ancestors already received substantial payment for the land at issue in this action. Therefore, the court lacks subject-matter jurisdiction over all of Plaintiff's claims because of res judicata and the statute of limitations.

"The doctrine of res judicata provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (internal quotations omitted). The elements required to establish res judicata are: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Id.* (internal quotations omitted).

The court finds that the second and third elements here are met. On the issue of final judgment on the merits, according to the judgment submitted for judicial notice[6] by Defendants Untalan and GIAA, Plaintiff's ancestor, Josefina Palacios Flores, by virtue of a judgment entered in Civil Action No. 21-50, was paid $8,340 on May 8, 1951 for the taking of her property by the Naval Government of Guam.

---

[6] The court hereby grants Plaintiff's and Defendants' requests for judicial notice. *See* ECF Nos. 35 & 49.

Defendants Untalan and GIAA further supplied documentation that shows that Plaintiff's ancestors received compensation through the claims procedure authorized by 48 U.S.C. § 1424c. On March 9, 1993, the District Court awarded Josefina Palacios Flores $71,227.22 for the taking of Lot 5204 under 48 U.S.C. § 1424c.

On the issue of privity, privity is present in this case because (a) Plaintiff has alleged that the U.S. Government transferred Lot 5204 to GIAA, and (b) Plaintiff is claiming that he is owed compensation for GIAA's use of Lot 5204. *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) ("nonparty preclusion may be justified based on a variety of pre-existing substantive legal relationship[s] between the person to be bound and a party to the judgment . . . . [which] include . . . preceding and succeeding owners of property.") (internal quotations omitted).

However, the first element of res judicata has not been met in this case: there must be an identity of claims. "Identity of claims exists when two suits arise from the same transactional nucleus of facts." *Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1078 (internal quotations omitted). Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action. *Id.*

Here, Plaintiff's claims do not include a cause of action under 48 U.S.C. § 1424c or a takings claim. Plaintiff's claims instead arise out of territorial enactments of the Government of Guam, which were passed after the section 1424c cases were filed and resolved, and therefore could not have been brought at that time. The Ninth Circuit has held that a claim "arising after the date of an earlier judgment is not barred, even if it arises out of a continuing course of conduct that provided the basis for the earlier claim." *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000).

In addition, Plaintiff's claims do not challenge the United States Government's taking of his ancestral land and instead are grounded in subsequent territorial enactments. The Guam

12

Legislature has specifically concluded that the 48 U.S.C. § 1424c litigation was inadequate, and thus the ancestral landowners were entitled to additional compensation beyond what they received in the Section 1424c litigation. For example, in Public Law No. 25-45, the Guam Legislature found that to the extent ancestral landowners received payments from the United States for their land, they were less than fair market value.[7]

Defendants Untalan and GIAA also contend that the statute of limitations of 48 U.S.C. Section 1424c applies to bar Plaintiff's claims. This statute of limitations has not barred Plaintiff's claims because Guam statutes specifically preserve the right of landowners to sue for compensation in exchange for their ancestral claim being extinguished. *See, e.g.*, 21 G.C.A. § 80104(a)(1)–(2) & (b).

Because the doctrine of res judicata and the statute of limitations do not bar Plaintiff's claims, the court hereby **DENIES** Defendants Untalan and GIAA's motion to dismiss Plaintiff's claims based on res judicata.

### B. Defendants' Arguments to Dismiss Complaint for Failure to State a Claim.

The court will address Defendants Calvo and Orlino's arguments to dismiss Plaintiff's Complaint for a failure to state a claim before turning to Defendants Untalan and GIAA's arguments. Defendants Calvo and Orlino's arguments are as follows: (1) failure to state a claim for a violation of the Due Process Clause; (2) failure to state a claim for a violation of the Equal Protection Clause; (3) failure to state a breach of contract claim; and (4) failure to state an unjust enrichment claim. Defendants Untalan and GIAA's arguments are as follows: (5) preemption of the unjust enrichment claim by federal law; (6) failure to state a claim for a violation of the Equal

---

[7] Defendants also argued that if Plaintiff's unjust enrichment claim arises out of equity, then that cause of action existed at the time that Plaintiff's ancestors made their claim, and is thus forever barred by the broad release language of the settlement agreement and judgment on their claims. However, because Plaintiff's unjust enrichment claim is derived from the obligations imposed by Guam public laws, which did not exist at the time that the settlement agreement and judgment were concluded, the unjust enrichment claim could not have been brought at that time, and is not barred by res judicata.

13

Protection Clause.

### 1. Due Process claim.

On the issue of failure to state a claim for a violation of the Due Process Clause, Defendants Calvo and Orlino presented two main arguments: that Defendants Calvo and Orlino—in their official capacities as the Governor of Guam and the Chairperson of the Guam Ancestral Lands Commission, respectively—are improperly sued because only the Guam Legislature can remedy Plaintiff's complaint; and that Plaintiff does not have a protected property interest.

### i. Proper suit of Defendants Calvo and Orlino.

Pursuant to 42 U.S.C. § 1983, a suit against a government employee in their official capacity for injunctive relief is proper. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989). Accordingly, Defendants Calvo and Orlino, in their capacities as government officials, may be sued under 42 U.S.C. § 1983 and are therefore proper defendants. It is immaterial whether or not Calvo, as the Governor, and Orlino, as the Chair of the Ancestral Lands Commission, lack the ability to enact legislation.

### ii. Protected property interest.

A protected property right is the first prong of a due process claim. *See Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993) (to succeed on a due process claim, a plaintiff must demonstrate (1) a protected liberty or property interest, (2) a deprivation of that interest by the government, (3) and a lack of process). The other prongs are not at issue, because the parties did not raise them and the court does not see a reason to examine them.

Through 21 G.C.A. § 80102, the Guam Legislature "affirm[ed] and formally recognize[d] the 'Ancestral Property Right.'" Under 21 G.C.A. § 80104, government officials may not grant or deny the benefit at their discretion—they are mandated to return the lands or pursue just

14

compensation if the land cannot be returned. Therefore, Plaintiff and the class have a protected property interest. *See, e.g.*, *Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)) ("A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source such as state law.'").

In this case, ownership is not at issue. Plaintiff is the rightful owner of the property, based on the Ancestral Lands Commission's verification. Plaintiff's property is currently being occupied by GIAA and as such, Plaintiff has a verified claim of entitlement to the ancestral lands or to monetary compensation. Therefore, the laws of the Guam Legislature have vested an enforceable right in Plaintiff, and the court finds that Plaintiff has a protected property interest.

Based on this court's findings, the court **DENIES** Defendants Calvo and Orlino's motion to dismiss the Due Process claim.

### 2. Equal Protection claim.

Defendants Calvo and Orlino argue that the Complaint fails to state a claim for a violation of the Equal Protection Clause, because the unequal treatment of Plaintiff's alleged class only need pass rational basis review. Defendants Calvo and Orlino further contend that the Government of Guam must treat different landowners differently due to the occupation (or lack thereof) of ancestral lands by the Government of Guam, and thus a rational basis is served by the unequal treatment.

A classification fails rational basis review if there is no rational relationship between the disparity of treatment and some legitimate governmental purpose. *Armour v. City of Indianapolis, Ind.*, 132 S.Ct. 2073, 2080 (2012). A classification may "in practice . . . result in some inequality" and still not violate the Equal Protection Clause. *Dandridge v. Williams*, 90

S.Ct. 1153, 1161 (1970).

If "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the court cannot dismiss the claim. *Ashcroft*, 556 U.S. at 678.

Assuming, without deciding, that the court determines that rational basis review applies in this case, Plaintiff's Complaint pleads facts that allow the court to draw the inference that Plaintiff has been denied equal protection of the law by the actions of Defendants Calvo and Orlino' policies and practices. No rational purpose is served when some ancestral landowners receive land or compensation relatively quickly, while other ancestral landowners—in this case, the Tiyan landowners, have waited in legal and administrative limbo for 17 years without receiving compensation.

Therefore, Defendants Calvo and Orlino's motion to dismiss the Equal Protection claim is **DENIED.**

### 3. Breach of contract claim.

Defendants Calvo and Orlino contend that Plaintiff cannot bring a breach of contract claim, because no contract exists between themselves and Plaintiff, and because Plaintiff is improperly seeking specific performance.

The formation of a contract generally requires that there be an offer, an acceptance, and consideration. *See, e.g.*, *Mack v. Davis*, 2013 Guam 8 ¶ 33 (2013) (internal quotations omitted).

In terms of public laws passed by legislatures, the well-established presumption is that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Robertson v. Kulongoski*, 466 F.3d 1114, 1117 (9th Cir. 2006) (internal quotations omitted). The party asserting the creation of a contract must overcome this well-founded presumption. *Id.* at 1118. The court must proceed cautiously

16

both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation. *Id.*

Plaintiff has pled facts that, if taken as true, allow the court to make the inference that Defendants Calvo and Orlino could be bound by contract. *Ashcroft*, 556 U.S. at 678.

Guam law recognizes that an existing legal obligation resting upon the promisor, or a moral obligation originating in some benefit conferred upon the promisor or prejudice suffered by the promisee, is consideration for a promise. 18 G.C.A. § 85502. Public Law 22-145 states that Guam received land through the federal government land transfer and would ensure that such lands are "rightfully" used in a fashion that benefits all "original owners." In addition, statutes such as 21 G.C.A. § 80102 and 1 G.C.A. § 2004 formally recognize the rights of ancestral landowners to compensation.

Further, Plaintiff pled facts that include the following: Public Law 26-100 created a government task force and mandated that it find alternative means of compensation for ancestral landowners of land needed for airport operations, including "identify[ing] suitable properties" that can be conveyed to the landowners in exchange. Public Law 30-06 mandated that the taskforce and the Ancestral Lands Commission come up with an acceptable land-trade agreement within a specified time and provide procedures for the agreement to be subsequently written into law. Public Law 30-158 then did exactly that.

While Plaintiff bears a high burden, this likely unique situation meets the elements of an enforceable contract between the Government of Guam and Plaintiff. For example, the presence of an enforceable contract, based on the public laws, may be viewed this way: Plaintiff has conferred the benefit of land upon the Government of Guam, he has been prejudiced by the inability to regain the lands, and the Government of Guam has recognized an obligation to provide compensation. By submitting an ancestral land application to receive this promised

17

compensation, Plaintiff accepted the government's offer to provide compensation.

Defendants Calvo and Orlino assert that Plaintiff is seeking specific performance of the alleged contract. The court finds this argument to have no merit. Plaintiff is not seeking specific performance: in the Complaint, Plaintiff alleges that the Government of Guam breached its general obligation to provide compensation, not specifically the two lots proposed for transfer in Public Law 30-158.

Based on the foregoing, the court finds that Plaintiff's Complaint contains sufficient factual matter to state a breach of contract claim, if accepted as true. Accordingly, the court **DENIES** Calvo and Orlino's motion to dismiss the breach of contract claim.[8]

### 4. Unjust enrichment claim.

Defendants Calvo and Orlino state that Plaintiff's claim for unjust enrichment fails because he does not allege that the government possesses a specific thing or sum of money that actually belongs to him, and alternatively, that unjust enrichment is not a cause of action under Guam law.

First, the court finds that unjust enrichment is a claim under Guam law. *See, e.g.*, *Quichocho v. Macy's Dep't Stores, Inc.*, 2008 Guam 9 (2008).

Second, Plaintiff in this case is an ancestral landowner of Lot 5204 in Tiyan, Barrigada, which is currently being used by GIAA for the operation of A.B. Won Pat International Airport. Therefore, Plaintiff has alleged that the government is in possession of a specific thing—or in the alternative, a sum of money equivalent to the value of the property (in essence, a sum of money that actually belongs to him), and can sue for restitution. *See Lucky Auto Supply v. Turner*, 244 Cal.App.2d 872, 885 (1966).

---

[8] Defendants Calvo and Orlino assert that Public Law 30-06 may be expired because the complex process of execution delineated in Public Law 30-06 did not occur, and that Public Law 30-158 is likely invalid per the *Gange* order of the Superior Court of Guam. The court will not address these issues as these are factual issues more appropriate for trial.

18

The court therefore **DENIES** the motion to dismiss Plaintiff's unjust enrichment claim.

### 5. Preemption of the unjust enrichment claim by federal law.

Defendants Untalan and GIAA assert several reasons as to why Plaintiff's unjust enrichment claim against GIAA is barred and preempted by federal law. The court will touch on the issues raised but it need not go through each of them in detail.

First, Defendants Untalan and GIAA contend that should any unjust enrichment judgment be awarded in this case, federal law bars GIAA from paying the judgment. Defendants Untalan and GIAA rely on the Airport and Airway Improvement Act ("AAIA"), wherein it states that it is the policy of the United States "that airport fees, rates, and charges must be reasonable and may only be used for purposes not prohibited by this subchapter[.]" 49 U.S.C. § 47101(a)(12). The AAIA further explains:

> The revenues generated by an airport that is the subject of Federal assistance may not be expended for any purpose other than the capital or operating costs of--(1) the airport; (2) the local airport system; or (3) any other local facility that is owned or operated by the person or entity that owns or operates the airport that is directly and substantially related to the air transportation of passengers or property.

49 U.S.C. § 47133(a).

However, a dismissal of an unjust enrichment claim is different from an inability to pay a judgment, which is irrelevant on a motion to dismiss. *See, e.g.*, *Tulsa Indus. Auth. v. Tulsa Airports Improvement Trust*, No. 13-CV-0179-CVE-TLW, 2013 WL 5964012, at *4 (N.D. Okla. Nov. 7, 2013) (defendant-airport stated that the court was required to determine if the airport could use revenue to pay a judgment, but the court declined to resolve the issue in order for plaintiffs to prevail on their claims, "because plaintiffs are not required to prove as an essential

19

element of their claims that defendant actually has sufficient funds to pay a judgment.").[9]

Further, Defendants Untalan and GIAA offer no argument that if Plaintiff won his unjust enrichment claim, they would be unable to pay it from GIAA funds that are not "revenues" as defined by the FAA guidelines.

Second, the court is not convinced that satisfying a judgment on Plaintiff's unjust enrichment claim would not be a capital or operating cost. Because there is no caselaw with similar facts to the present case, the court looks to the Federal Aviation Agency ("FAA")'s Policy Statements. For example, FAA's Policy Statements state that operating costs may be direct or indirect and a payment "reflecting the value of services and facilities provided to the airport" is not an improper revenue diversion. Policy and Procedures Concerning the Use of Airport Revenue, 64 Fed. Reg. 7696, 7717 (Feb. 16, 1999) (codified at 49 U.S.C. § 47107(k)(2)(A)). In the present case, Plaintiff's unjust enrichment claim seeks payment for a benefit received by the GIAA that is at the core of its operations: the airport land.

The FAA Policy Statements also state that airport revenue may be used to reimburse "[o]perating costs for an airport [that] may be both direct and indirect and may include all of the expenses and costs that are recognized under the generally accepted accounting principles and practices that apply to the airport enterprise funds of state and local government entities." FAA Policy Statement, 64 Fed. Reg. at 7718. Therefore, in a case as unique as the present one, such a policy statement can be construed as allowing airport revenues to be spent on a judgment rendered by the court.

Third, Defendants Untalan and GIAA's reliance on *City of Oceanside v. AELD, LLC*, 740 F.Supp.2d 1183 (S.D. Cal. 2010) is misplaced. In that case, the court invalidated a clause in a settlement agreement between the City of Oceanside and defendant AELD, LLC as preempted

---

[9] Although the procedural posture of *Tulsa* was a decision on a motion to remand, the decision is still persuasive to the court.

by federal law because the clause's enforcement would take land away from the airport, possibly

causing the airport to violate FAA safety regulations. Here, Plaintiff is not seeking to take his

land back from GIAA, and is instead seeking monetary compensation for the GIAA's use of his

ancestral land. Therefore, Plaintiff's case does not affect the federal interest in aviation safety by

removing land previously used for airport purposes, which was at the center of the *Oceanside*

decision.

Fourth, Untalan and GIAA mischaracterize the quitclaim deed requirements. The

quitclaim deed requires that all revenue generated by the airport property conveyed by the U.S.

Government be used in a manner consistent with 49 U.S.C. § 47133. *See* Quitclaim Deed

Section A (11), ECF No. 35-2 at 45. The deed also requires that if any restriction is violated, the

U.S. Government reserved the option to revert ownership of the property back to the U.S.

Government, *unless* within 60 days such a violation shall have been cured or GIAA has

commenced the actions necessary to bring it into compliance. *Id.*, Section E (1), ECF No. 35-2 at

49 (emphasis added). Therefore, even if the U.S. Government felt that expending airport revenue

to pay a judgment in this case violated a restriction, the land would not automatically revert back

to the U.S. Government, as Untalan and GIAA state.[10]

For these reasons, the court **DENIES** Defendants Untalan and GIAA's motion to dismiss

the unjust enrichment claim against GIAA due to federal preemption.

### 6. Equal Protection claim.

For the same reasons that this court denied Defendants Calvo and Orlino's motion to

dismiss the Equal Protection claim, the court hereby **DENIES** Defendants Untalan and GIAA's

---

[10] Defendants Untalan and GIAA also raise the argument that the Guam Legislature recognized that using GIAA funds for relief for ancestral landowners might interfere with the operation of GIAA or could violate federal law. Specifically, in 2002, the Guam Legislature passed Public Law 26-100, stating that all government agencies besides GIAA must cease to use the Tiyan properties. In addition, in 2009, Public Law 30-06 amended Public Law 26-100 to no longer require that a GIAA representative serve on the Tiyan Task Force. While Defendants Untalan and GIAA read into these facts as legislative recognition that GIAA may not use airport revenue funds to compensate ancestral landowners, these conclusions are merely speculation.

1    motion to dismiss the Equal Protection claim.

2       **IV.**     **Conclusion**

3         Based on the aforementioned reasoning, the court hereby **DENIES** Defendants Eddie

4    Baza Calvo and Anita F. Orlino's Motion to Dismiss and for Summary Judgment, and

5    Defendants Edward G. Untalan and Antonio B. Won Pat International Airport Authority's

6    Motion to Dismiss Complaint.

7       **SO ORDERED.**



8                            **/s/ Frances M. Tydingco-Gatewood**

9                                **Chief Judge**
                              **Dated: Mar 31, 2016**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

22